891 F.2d 286
 29 Fed. R. Evid. Serv. 140
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
GREEN HILL CORPORATION, Plaintiff-Appellee,
v.
GREENKO CORPORATION, Defendant-Appellant,
and
Richmark Factory Stores of Oxon Hill, Inc.; Richmark
Corporation; Charles C. Kim; Duak F. Kim, Defendants.
 No. 86-2072.
 United States Court of Appeals, Fourth Circuit.
 Submitted: Sept. 7, 1989.
Decided: Nov. 17, 1989.
 
 Michael J. Weiser, on brief, for appellant.
 Raymond D. Battocchi, Cole and Groner, PC., on brief, for appellee.
 Before WINTER, K.K. HALL and PHILLIPS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Greenko Corporation was found liable to Green Hill Corporation after a jury trial on a breach of contract claim. In a subsequent proceeding, the district court, Cacheris, J., pierced the corporate veil and held Charles C. Kim and his wife Duak F. Kim personally liable for Greenko's obligation. Greenko and Charles C. Kim now appeal, alleging that the district court erred in refusing to admit certain bank statements proffered on the issue of damages sustained by Green Hill. We affirm.
 
 
 2
 Green Hill, a South Korean corporation with headquarters in Seoul, contracted to sell costume jewelry, gloves, and other merchandise to Richmark Corporation, a subsidiary of Greenko, which is a Virginia corporation.[1] The goods were shipped pursuant to documents of acceptance contracts (d/a contracts); the total dollar value of the contracts was $546,058.05. Green Hill brought a breach of contract action when Greenko did not tender the total amount due under the contracts.
 
 
 3
 Greenko did not dispute that it received and accepted the goods. Instead, Greenko proffered evidence in the form of bank statements, with translations, from three South Korean banks showing payments from the banks to Green Hill of $440,580.56. Greenko argued that the bank statements showed that Green Hill had been paid that amount and thus had suffered substantially less damages than alleged in the complaint. Green Hill responded that the statements related only to its own financing of the goods ultimately shipped to Greenko. The district court agreed with Green Hill, ruling that the evidence was relevant only to a collateral issue and that the prejudicial effect of the evidence outweighed its probative value.
 
 
 4
 The district court did not abuse its discretion in excluding the evidence of the bank statements. See United States v. MacDonald, 688 F.2d 224, 227-28 (4th Cir.1982) (appraisal of probative value and prejudicial effect of proffered evidence entrusted to the sound discretion of the trial court). The contracts here involved the sale of "goods"; Virginia's Uniform Commercial Code--Sales (U.C.C.) provides the legal framework for Green Hill's claim. See Va.Code Ann. § 8.2-102 (1965). The buyer must pay the contract price for any goods accepted. Id. § 8.2-607(1). "When the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages ..., the price of goods accepted...." Id. § 8.2-709(1)(a).
 
 
 5
 We agree with the district court that the probative value of the bank statements, if any, is substantially outweighed by the danger of confusion of the issues and misleading of the jury that would have arisen from the admission of the statements into evidence. See Fed.R.Evid. 403. We would have to strain to find any relevance in the statements since Greenko has never argued that it paid the amounts shown in the statements. Admission of the statements could have confused the relevant issue, receipt of payment from Greenko, with the collateral issue of Green Hill's method of financing. Greenko was liable, under the U.C.C., for the price of the goods accepted, and admission of the bank statements would only have deflected the jury's focus from this issue.
 
 
 6
 Greenko correctly notes that bank statements may be admissible under the business records hearsay exception in Federal Rule of Evidence 803(6) or under the general exceptions in Rules 803(24) and 804(b)(5). And payment by Greenko was obviously relevant to Green Hill's breach of contract claim. The jury awarded Green Hill $530,990.05, reflecting a finding that Greenko had paid $15,068 of the contract price due. But Greenko, as noted, has never argued that it paid the portion of the contract price reflected in the bank statements. Evidence that Green Hill was able to finance the cost of the goods shipped, financing undoubtedly based on Greenko's orders, does not show that Greenko paid the contract price it owed.
 
 
 7
 For the forgoing reasons, we affirm the judgment of the district court against Greenko and the subsequent judgment holding the Kims jointly and severally liable for the judgment amount. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.
 
 
 8
 AFFIRMED.
 
 
 
 [1]
 Charles C. Kim was the president of both Greenko and Green Hill at the time of the sales transactions